IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TINA L. HOWELL RUTHERFORD                                    PLAINTIFF

V.                                    NO. 12-3024

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security Administration           DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claims for a period of disability and disability insurance benefits (DIB) and supplemental

security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security

Act (Act). In this judicial review, the Court must determine whether there is substantial evidence

in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

Plaintiff protectively filed her applications for DIB and SSI on September 17, 2008,

alleging disability since March 30, 1997,[2] due to "Stress and panic disorder; mental problems."

(Tr. 206, 211).  An administrative hearing was held on July 15, 2010, at which Plaintiff appeared

with counsel, and she and her mother testified.  (Tr. 32-58).

By written decision dated February 25, 2011, the ALJ found that during the relevant time

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner  Michael J. Astrue as the defendant in this suit.

[2]The Plaintiff indicates January 1, 2006, as the onset date in the application. (Tr. 206). However, in his decision, the ALJ referred to March 1, 1997 as the alleged onset date. (Tr. 12).  In Defendant's brief, Defendant states that "[i]t is not clear when or where Plaintiff's claim that she became disabled on March 1, 1997 began, however, her application for disability benefits under Title II originally alleged that she became disabled on January 1, 2006. (Doc. 10).  For purposes of this discussion, the Court will consider March 1, 1997 the onset date, as did the ALJ.

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - mood disorder, back disorder, joint pain and polysubstance dependence. (Tr. 13).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift/carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours and stand/walk for two hours. The claimant can frequently climb, balance, crawl, kneel, stoop, crouch and work overhead. The claimant can do work where interpersonal contact is incidental to the work performed and work where the complexity of tasks is learned and performed by rote with few variables and little judgment required. The supervision required is simple, direct and concrete.

(Tr. 15).  The ALJ determined Plaintiff did not have any past relevant work, and, with the help of a vocational expert (VE), found that there were other jobs Plaintiff would be able to perform, such as production work, i.e. patcher. (Tr.19-20). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on December 20, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 7, 10).

## I.     Evidence Presented:

Plaintiff was born in 1967 and completed the sixth grade. (Tr. 35, 206, 215). The first medical record contained in the transcript is dated October 22, 2003, when Plaintiff presented herself to Ozarks Medical Center, complaining of anxiety, panic attacks, and depression.  (Tr. 281). She was then assessed with depression/anxiety and increased blood pressure. (Tr. 281).

On October 23, 2003, Plaintiff presented herself to Health Resources of Arkansas, and

-2-

described herself as on "stress overload."  It was reported that the central theme presented was

multiple drug use, depression and anxiety.  (Tr. 388). Plaintiff indicated that she last used

methamphetamine on January 13, 2003, cocaine one year ago, and alcohol on October 13, 2003.

(Tr. 382).  The diagnosis at that time was:

| | |
|---|---|
| Axis I: | Polysubstance Dependence (meth, alcohol, cannabis, cocaine) |
| | Panic Disorder w/o agoraphobia |
| | Dysthymic Disorder |
| | P.T.S.D. |
| Axis II: | 799.9 |
| Axis III: | slight heart murmur |
| Axis IV: | addiction, relationship, financial |
| Axis V: | Current GAF - 40; past highest GAF - 61 |

(Tr. 390).

On October 29, 2003, Plaintiff reported to Ozarks Medical Center that she had started on

new medication and was doing well. (Tr. 282). It was noted that she was smoking one pack or

less of cigarettes a day. (Tr. 282).

On April 6, 2004, Plaintiff presented to Ozarks Medical Center with a blunt trauma to

the forehead, and sutures were in place. (Tr. 280). She was assessed with blunt head trauma,

nausea and dizziness and laceration-suture removal. (Tr. 280).  On May 18, 2004, Plaintiff

complained to Ozarks Medical Center of stress and depression, and indicated she had problems

with her boyfriend. (Tr. 279).

On November 6, 2004, Plaintiff was discharged from the care of Health Resources of

Arkansas, where it was reported that Plaintiff only returned to the clinic one time after the initial

intake. (Tr. 394).

Two years later, on June 15, 2006, Plaintiff presented to Health Resources of Arkansas,

-3-

and in the Master Treatment Plan, she was diagnosed as follows:

| | |
|---|---|
| Axis I: | Panic d/o without agoraphobia |
| | Dysthymic d/o |
| | Polysubstance dependence in remission |
| Axis II: | Diagnosis deferred |
| Axis III: | Arthritis |
| Axis IV: | problems with primary support; economic problems; problems related to legal system/crime |
| | Other psychosocial/environmental problems |
| Axis V: | Current GAF - 40-45 |

(Tr. 395). On July 17, 2006, at her Initial Psychiatric Evaluation at Health Resources, Plaintiff stated that she needed "something for panic attacks." (Tr. 398). She also reported that she currently drank alcohol and used marijuana daily. (Tr. 398). Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | Panic d/o w/o agoraphobia |
| | R/o substance induced mood d/o |
| | Polysubstance dependence |
| Axis II: | deferred |
| Axis III: | arthritis (no official dx) |
| Axis IV: | problems with primary support; problems with access to health care; other psychosocial/environmental problems; occupational problems; economic problems; problems related to legal system/crime |
| Axis V: | Current GAF - 51-55 |

(Tr. 401). Reports dated September 7, 2006 and September 8, 2006, from Ozarks Medical Center indicate that Plaintiff had complained of "nerves" and increased anxiety as well as back pain and herpes outbreak, and that she tolerated Effexor well. (Tr. 278, 403).

On November 13, 2006, Plaintiff complained to Ozarks Medical Center of worsened depression, and stated that Effexor was causing her not to sleep. (Tr. 277). She was assessed with depression and anxiety. (Tr. 277). On December 19, 2006, Plaintiff presented herself to Ozarks Medical Center, reporting that she was involved in an altercation on Thanksgiving with

-4-

her husband's ex-wife, and suffered from a deep bruise to her left shin and left eye. (Tr. 276). She was assessed with depression, anxiety, and left leg contusion. (Tr. 276).

On May 14, 2007, Health Resources of Arkansas discharged Plaintiff from their care, reporting that their last contact with Plaintiff was on February 18, 2006, and that she did fairly well, but quit coming before she actually made much headway. (Tr. 405). The report did state that her GAF improved to 50. (Tr. 405).

One year later, on May 5, 2008, Plaintiff presented herself to Salem 1st Care, complaining of low back pain, chronic, and right shoulder pain.  (Tr. 274). At that time, Plaintiff was not taking any prescription medications. (Tr. 274). Plaintiff reported that she recently took a job where she sat for eight hours, and was complaining of pain under her right shoulder and muscle spasms with pain.  (Tr. 274). She was taking Tylenol, ibuprofen and aspirin. (Tr. 274). On May 20, 2008, Plaintiff reported to Salem 1st Care that her low blood pressure was improved. (Tr. 272). She was assessed with gastroenteritis and low back pain. (Tr. 273). Plaintiff reported to Salem 1st Care again on June 16, 2008, complaining of stress. (Tr. 285). She also complained of knee pain bilaterally and neck pain, and was reported as having vicodin for pain. (Tr. 285). She was assessed with back pain and anxiety. (Tr. 287).

On August 7, 2008, Plaintiff presented herself to Mountain Home Christian Clinic, requesting to have a hepatitis profile done because she was preparing to go to work for a teen challenge program and did have a history of needle exposure, illicit sex, and drugs. (Tr. 292). Otherwise, she had no complaints. (Tr. 292).

On November 4, 2008, a Case Analysis was prepared by Dr. Bill F. Payne, who concluded that Plaintiff's physical impairments were non-severe. (Tr. 295).

AO72A
(Rev. 8/82)

On December 12, 2008, at the request of the Social Security Administration, Nancy A. Bunting, Ph.D, conducted a Mental Status and Evaluation of Adaptive Functioning.  (Tr. 300-305).  Dr. Bunting reported that when Plaintiff was asked how her "bad" depression affected her working, she stated it did not. (Tr. 300). However, she said her anxiety had affected her work. (Tr. 300). Plaintiff told Dr. Bunting that her last panic attack occurred three days earlier and that she had them approximately once a month, and that previously, Celexa was effective in controlling the panic attacks. (Tr. 300). At that time, Plaintiff was in court ordered drug counseling once a week since October 2008, and she was on probation. (Tr. 300-301). She was not taking any psychiatric medications. (Tr. 301).  Dr. Bunting reported that a lack of money had been an obstacle to her receiving mental health treatment. (Tr. 301).  Plaintiff reported that she had two glasses of wine the day before, and had used "everything," including marijuana, Xanax, pain pills and methamphetamine. (Tr. 302).  Dr. Bunting diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | alcohol dependence and polysubstance abuse in remission by report |
| Axis II: | no diagnosis |
| Axis III: | chronic pain by report |
| Axis IV: | moderate |
| Axis V: | GAF 48-58 |

(Tr. 304).  Dr. Bunting further reported that Plaintiff could do all of her self-care, smoked one pack of cigarettes daily, lost her driver's license in June 2008, because of her third DWI, washed dishes, did the laundry, sometimes cleaned, and cooked. (Tr. 304). She spent her time doing housework, caring for her animals, and selling firewood. (Tr. 304). Dr. Bunting concluded that Plaintiff communicated and interacted in a socially adequate manner; communicated in an intelligible and effective manner; was likely to have the capacity to cope with the cognitive

-6-

demands of basic work-like tasks if she made an effort; had some ability to deal with the public, work stress or changes, and following instructions from supervisors; could attend and sustain her concentration in the interview which focused on herself; had concentration that may be adequate for basic tasks; was able to persist in the interview and was capable of doing this for at least short periods of time; may be able to complete work-like tasks within an acceptable time frame if she made the effort and used the Celexa, which had reportedly been very effective in controlling her panic attacks; and that she made a minimal effort and her level of cooperation was superficial. (Tr. 305).

On December 23, 2008, a Mental RFC Assessment was completed by non-examining consultant Winston Brown. (Tr. 309-311). Dr. Brown found Plaintiff to be moderately limited in seven categories and not significantly limited in twelve categories. (Tr. 311). He also found that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables and little judgment; and where supervision required was simple, direct and concrete (unskilled). (Tr. 311). Dr. Brown also completed a Psychiatric Review Technique form on December 23, 2008, where he found that Plaintiff had a moderate degree of limitation in difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; a mild degree of limitation in restriction of activities of daily living; and no episodes of decompensation. (Tr. 327). He concluded that Plaintiff appeared capable of unskilled work. (Tr. 327).

From January 22, 2009 to June 3, 2009, Plaintiff met with various individuals at Carbon Medical Services Association in Utah, where she was assessed with depression, insomnia, stress

of muscles in her back, nicotine dependence, anxiety and anxiety disorder, and generalized arthalgias. (Tr. 354, 358, 359, 363).

From July 22, 2009 to February 16, 2010, Plaintiff saw Karl F. Kraync, M.S., CRC, NCC, LPC. The reports from those visits are minimally informative regarding Plaintiff's health. However, in a report dated November 10, 2009, Mr. Kraync noted that Plaintiff looked good, and when he made a comment that she appeared to be feeling better, Plaintiff responded that she had drastically curtailed her drinking and had totally discontinued using "pot." (Tr. 366). At that time, Plaintiff was working four days per week cleaning houses, and it was Mr. Kraync's understanding that Plaintiff would be working toward her GED and completing a driver's education course. (Tr. 366). On February 16, 2010, Plaintiff again met with Mr. Kraync, and said she had not been to see him because she had slipped into a major depressive episode. (Tr. 365).

On February 9, 2010, Plaintiff again visited the clinic in Utah, complaining that she was involved in a domestic dispute on Saturday and that her boyfriend and his family beat her up. (Tr. 347). She reported having black eyes and broken ribs, but was not seen in the emergency room for x-rays or evaluation. (Tr. 347). Plaintiff was assessed with benign essential hypertension and a closed fracture of one right rib. (Tr. 348).

On August 27, 2010, Plaintiff visited Boston Mountain Rural Health Center, complaining of back pain for two years. (Tr. 378). At that time she was smoking ½ pack of cigarettes per day. (Tr. 378). The doctor noticed a large lesion on the right outer surface of her nose over an area of previous piercing which was very suspicious for basal cell carcinoma. (Tr. 378). On September 10, 2010, a pathology report found the lesion to be a basal cell carcinoma. (Tr. 435).

-8-

On October 20, 2010, Plaintiff visited the Boston Mountain Rural Health Center again, complaining that her back and elbow hurt.  (Tr. 375). She also reported that she had pain in her back which would radiate all the way down to the left foot, and that her left foot went numb. (Tr. 375). At that time, she was working at a shirt factory, and was going for surgery on her nose on November 19th. (Tr. 375). Plaintiff was assessed as follows:

> 1. Low back pain/Lumbago
> 2. Depressive disorder, not elsewhere classified
> 3. Arthritis/unspecified arthropathy, site unspecified.

(Tr. 376).  The doctor also noted that Plaintiff's rheumatoid factor was elevated, which could be a sign of rheumatoid arthritis, and they discussed the fact that she may need to get an MRI. (Tr. 376). However, Plaintiff stated she could not afford it. (Tr. 376).  Two x-ray views of Plaintiff's lumbar spine revealed hypertrophic facet changes, L5-S1, with at least mild bilateral foraminal stenosis. (Tr. 380).

On November 19, 2010, Plaintiff had her basal cell carcinoma removed from her nose by Dr. Daniel Davis at University of Arkansas Medical Sciences. (Tr. 418).

On January 4, 2011, Plaintiff presented herself to Boston Mountain Rural Health Center, complaining that her face was infected and that her stitches were still there.  (Tr. 408).  Plaintiff was assessed with low back pain/lumbago; depressive disorder, not elsewhere classified; and dental issues. (Tr. 409).

III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

-10-

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

## IV. Discussion:

Plaintiff raises the following issues on appeal: 1) The onset date is ambiguous and the ALJ erred in not requiring a medical consultative physical examination to determine the onset date; 2) The ALJ erred in failing to adequately develop the record; and 3) The ALJ's decision is not supported by substantial evidence.

### A.    Determination of Onset Date:

Plaintiff argues that the ALJ should have obtained an expert opinion from a medical advisor to determine a medically reasonable date of onset. Plaintiff also cites to SSR § 83-20 to support his argument.

In this case, there were no medical records in the transcript that were dated prior to October 22, 2003.  The ALJ noted that Plaintiff met the  insured status requirements of the Act through March 30, 1997, and found that Plaintiff had not been under a disability from March 1, 1997, through the date of the decision.  (Tr. 12, 21).  The Court believes there is no ambiguity in the onset date. Plaintiff originally used January 1, 2006, as the onset date in her application, and the ALJ made the determination that Plaintiff was not disabled prior to the date last insured of March 30, 1997. As noted by the Defendant, there is nothing to support Plaintiff's claim of

-11-

disability on or before March 30, 1997, and accordingly, the Court believes Plaintiff's argument on this issue is without merit.

> **B.      Failure to Fully and Fairly Develop the Record:**

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995);   Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).   This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).   This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

Plaintiff argues that the ALJ failed to adequately develop the record by not acquiring sufficient expert medical opinion as to the "likely extent and severity of this lady's impairments prior to her date last insured...." (Doc. 7).   The Court believes Plaintiff's argument is unpersuasive and misplaced. As noted by Defendant, it appears Plaintiff is arguing that the ALJ must call a medical expert to verify that there are no records either before March 30, 1997, or for

AO72A
(Rev. 8/82)

six years thereafter. The Court is of the opinion that there was significant development of the record to support the ALJ's mental and physical RFC findings.  Plaintiff was able to perform all self care, shop by herself, wash dishes, do laundry and do some cleaning and cooking.  The ALJ discussed not only all of Plaintiff's daily activities, but also discussed at length the medical records. The ALJ noted that Plaintiff's description of her physical abilities contradicted her allegations of disabling pain/impairments. (Tr. 17). He also noted that initially, in Plaintiff's application, she reported that she was disabled due to alleged mental impairments and did not even mention physical symptoms. (Tr. 17). With respect to Plaintiff's alleged mental impairments, although Plaintiff indicated she was not able to afford medication that controlled her symptoms (Celexa), the ALJ noted that such drug is found on the Retail Prescription Program Drug List at Walmart for $4.00 for a 30-day supply.  (Tr. 18). As the ALJ reported, the record indicates that Plaintiff was nevertheless able to afford to smoke up to one pack of cigarettes per day and drink alcohol. (Tr. 18).

The ALJ did not discount all of Plaintiff's complaints and recognized that she did experience functional limitations. However, he noted that no physician placed any functional restrictions on her activities that would preclude work activity with the restrictions set forth by the ALJ.

The Court believes there is sufficient evidence for the ALJ to make a disability determination, and that the ALJ did not fail to fully and fairly develop the record.

### C.    Substantial Evidence:

For the reasons given above, as well as those given in Defendant's well-stated brief, the Court is of the opinion that there is substantial evidence to support the ALJ's decision.

-13-

**V.      Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of June, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE .

-14-